809 So.2d 1196 (2002)
STATE of Louisiana
v.
Earl DABNEY.
No. 01-1110.
Court of Appeal of Louisiana, Third Circuit.
February 27, 2002.
*1197 Alisa Ardoin Gothreaux, Assistant District Attorney, Opelousas, LA, for Appellee State of Louisiana.
Edward K. Bauman, Lake Charles, LA, for Appellee Earl Dabney.
Court composed of SYLVIA R. COOKS, BILLIE COLOMBARO WOODARD and MICHAEL G. SULLIVAN, Judges.
COOKS, Judge.
Defendant, Earl Dabney, was arrested for and charged with possessing a firearm while in possession of a controlled dangerous substance in violation of La.R.S. 14:95(E). He also was charged with possession of a firearm by a convicted felon in violation of La.R.S. 14:95.1. A jury found Defendant guilty of both charges. Defendant was sentenced to serve ten years at hard labor for possession of a firearm by a convicted felon and seven years at hard labor for possession of a firearm while in possession of a controlled dangerous substance. Both sentences were to run concurrently, without benefit of probation, parole or suspension of sentence. Defendant filed a motion for appeal, which was granted.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, Defendant argues the evidence presented at the trial was insufficient to support his convictions on both charges.
In reviewing the sufficiency of the evidence, this court applies the standard established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979).
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559, at 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). The role of the fact finder is to weigh the respective credibility of each witness. Therefore, the appellate court should not second guess the credibility determinations of the factfinder beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino v. King, 436 So.2d 559, at 563 (La.1983), citing State v. Richardson, 425 So.2d 1228 (La.1983).
State v. Miller, 98-1873 (La.App. 3 Cir. 10/13/99); 746 So.2d 118, at 120.

Possession of a Firearm by a Convicted Felon
Possession of a firearm by a convicted felon is governed by La.R.S. 14:95.1, which states in pertinent part:
A. It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(13) which is a felony or ... any violation of the Uniform Controlled Dangerous Substances Law which is a felony or any crime defined as an attempt to commit one of the above enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of *1198 any foreign government or country of a crime which, if committed in this state, would be one of the above enumerated crimes, to possess a firearm or carry a concealed weapon.
* * *
C. Except as otherwise specifically provided, this Section shall not apply to the following cases:
(1) The provisions of this Section prohibiting the possession of firearms and carrying concealed weapons by persons who have been convicted of certain felonies shall not apply to any person who has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole, or suspension of sentence.
In State v. Recard, 97-754 (La.App. 3 Cir. 11/26/97); 704 So.2d 324, 329, this court stated:
To convict Defendant of possession of a firearm by a convicted felon, the State must prove beyond a reasonable doubt: (1) the possession of a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the ten-year statutory period of limitation; and, (4) general intent to commit the offense. La. R.S. 14:95.1; State v. Husband, 437 So.2d 269 (La.1983); State v. Tatum, 27,301 (La.App. 2 Cir. 9/27/95); 661 So.2d 657.
Defendant does not dispute he was convicted of a felony drug offense within ten years of his arrest for the current offenses. Defendant also acknowledges he was on probation at the time he was stopped. However, Defendant contends the State did not present evidence sufficient to convince a reasonable jury he had possession of a firearm or a general intent to possess a firearm at the time he was stopped.
In State v. Brooks, 99-478 (La.App. 3 Cir. 12/8/99); 756 So.2d 336, writ denied, 00-1492 (La.5/25/01); 792 So.2d 750, this court affirmed the defendant's convictions for possession of a firearm by a convicted felon and possessing a firearm while in possession of a controlled dangerous substance. In our opinion, we stated:
Neither possession of a firearm by a convicted felon nor illegal carrying of weapons requires actual physical possession of a firearm upon the person of the accused; constructive possession of a firearm satisfies the possessory element. State v. Armentor, 94-745 (La.App. 3 Cir. 2/1/95); 649 So.2d 1187, writ denied, 95-0557 (La.6/30/95); 657 So.2d 1027, citing State v. Day, 410 So.2d 741 (La. 1982). Constructive possession exists when the illegal object is subject to the defendant's dominion and control. State v. Johnson, 463 So.2d 778 (La.App. 4 Cir.1985).
Id. at 339.
In State v. Heacox, 543 So.2d 101 (La. App. 3 Cir.1989), this court reversed the defendant's conviction under La.R.S. 14:95.1, holding the evidence was insufficient to prove the defendant had a general intent to possess a firearm. We stated:
"Constructive" possession of a firearm by a convicted felon is sufficient to support a finding of guilt. State v. Day, 410 So.2d 741 (La.1982). Mere presence in an area where contraband is found or mere association with an individual found to be in possession of such does not necessarily establish possession. State v. Viera, 449 So.2d 644 (La.App. 4 Cir.1984), writ denied, 450 So.2d 962 (La.1984). However, an individual found in close proximity to an area where contraband is located may be considered in constructive possession if the contraband *1199 is subject to his dominion and control. The determination of whether there is "possession" sufficient to convict depends on the particular facts of the case. State v. Walker, 514 So.2d 602 (La.App. 4 Cir.1987); State v. Trahan, 425 So.2d 1222 (La.1983).
Id., at 105-06.
However, in determining whether a defendant had the requisite intent under La. R.S. 14:95.1, we stated:
La.R.S. 14:95.1 requires only general criminal intent, which means that the circumstances indicate that the accused "in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La.R.S. 14:10(2). Although the existence of intent is a question of fact, it need not be proven as such, but may be inferred from the circumstances of a transaction.
State v. Recard, 704 So.2d at 329-30.
Officer Harrison testified she and her partner, Dwight Brown, were on duty on September 4, 1997. On that date they saw four black men outside of a house located at 735 Kim Drive. Immediately after observing Defendant, Officer Harrison and Officer Brown approached him and conducted an investigatory stop. Officer Harrison testified, during the stop, Defendant admitted to her there was a .45 caliber gun under the driver's seat of the vehicle he had been driving. Officer Harrison also testified, pursuant to her request, Defendant gave her permission to search the vehicle. During the search of the vehicle, the officers found a .45 caliber gun under the driver's seat.
At the trial, Defendant presented evidence regarding the ownership of the vehicle and the gun through his testimony and that of his girlfriend, Tierra Jones. Ms. Jones testified she owned the car Defendant was driving immediately prior to the stop. This testimony was corroborated by Officer Harrison. In addition, Ms. Jones testified she owned the gun that was in her car at the time of the stop. She further stated that she put the gun inside her car four or five days prior to September 4, 1997. At the trial, Ms. Jones' testimony regarding the ownership of the gun and the car was corroborated by Defendant.
Defendant testified he did not know the gun was in his girlfriend's car at the time that she "dropped the car off." Moreover, during the time he drove the car to meet his friend, Jeremiah Johnson, he was unaware of the gun's presence in the car. Defendant testified he discovered the gun when he re-entered the car to search for a cassette tape.
In State v. Tatum, 27,301 (La.App. 2 Cir. 9/27/95); 661 So.2d 657, the second circuit reviewed a case in which the defendant was convicted of possession of a firearm by a convicted felon after being stopped while driving with guns inside his truck. In Tatum, the defendant argued he was not aware of the presence of the guns in his truck until only thirty to forty minutes before being stopped by police officers. In affirming his conviction, the court in Tatum stated:
Even if defendant's statement was accepted by the jury, he had complete control and dominion over the guns and had the opportunity to dispose of the weapons or to relinquish his possession of them. Defendant discovered the guns 30 to 40 minutes prior to his arrest. If there is a reasonable time for a felon to divest himself of possession of a weapon, no matter how it was obtained, he must do so. State v. Grant, 414 So.2d 373 (La.1982); State v. Bailey, 511 So.2d 1248 (La.App. 2d Cir.1987), writ denied, 519 So.2d 132 (La.1988). Instead of removing *1200 the guns from his vehicle, defendant knowingly drove his truck for 30 to 40 minutes with the weapons under the seat. The facts are sufficient to establish that defendant actively desired to possess the weapons, even if for a short period of time.
Id. at 660-61.
In the instant case, it was uncontroverted Defendant had no knowledge the gun was inside the car prior to the time he arrived at his friend's home. Once Defendant discovered the gun, he did not attempt to touch the gun, remove the gun from the car or re-enter the car while the gun remained inside it. Instead, he left the gun in its position under the driver's seat of the car, while he remained standing outside of the car. We also note only fifteen minutes elapsed between Defendant's discovery of the gun and the time the officers approached him.
Defendant maintained he did not have an intent to possess the gun. He also admitted knowing that possessing a firearm would violate the terms of his probation. Defendant testified as follows:
Q. What was your statewhat was your state ofstate of mind after you saw this what you perceived to be a gun?
A. Well, at that exact moment, I was in what I would call a state of shock because II just thought about that I was on probation, and I knew the stipulations of my probation; but, at the same time, I had no recollection or no knowledge about what was under the driver's seat in the car that I was driving, and my comment was that I was just thankful that God had blessed me that no cop or no officer had stopped me upon me picking up Chris Kennerson and taking him to the Oil Mill, to Kim Drive as noted.
* * *
Q. Did you have any intention of leaving thatthatthat spot with that gun in that car?
A. Well, Mr. Barstow, if I had any intentions of leaving, it was surely not in that car.
Q. Did you have any intention of leaving that spot with the car?
A. No, sir. No, sir.
Q. Well, couldcould you have brought it into the house?
A. Well, that wasn't
Q. Could you have brought the gun into the house?
A. No, sir. No, sir.
Q. Could you have given it to somebody to hold?
A. No, sir.
Q. What was you gonna do with it?
A. I couldn't touch it. It was outta my hands, I justI just couldn't get back in the car, I knew that.
Q. All right. Could you have got somebody to get the gun out the car? Could you ask somebody?
A. No; no, sir.
Q. Huh?
A. No, sir; no, sir.
Q. So you hadn't made up your mind what you wanted to do?
A. Well, I knew one thing, I had made up my mind, Mr. Barstow, I knew that I wasn't leaving in that car any more.
Q. Now, at that time, roughly in that instant, did the Opelousas Police Department drive up?
A. Yes, sir, they did.
After a thorough review of the record, we find Defendant did not have the requisite intent to possess the gun. In State v. Brooks, this court stated:

*1201 The Defendant's two crimes require only general criminal intent, which is present "when the circumstances indicate that the offender in the ordinary course of human experience, must have averted to the proscribed criminal consequences as reasonably certain to result from his act or failure to act." La. R.S. 14:10(2). The State argues that it need only show that the offender was aware that a firearm was in his possession and that he had a general intent to possess the weaponthat he had a knowing or intentional possession.
* * *
Guilty knowledge is an essential element in proving constructive possession and may be inferred from the circumstances. State v. Converse, 529 So.2d 459 (La.App. 1 Cir.), writ denied, 533 So.2d 355 (La.1988); State v. Jones, 551 So.2d 18 (La.App. 4 Cir.1989). The State presented uncontroverted evidence that once the Defendant discovered it was his girlfriend who called the police about the illegal drugs, he viciously attacked and beat her. During the beating, the Defendant told Andrus that "You called them laws on me and you know all my business. You know everything about me." The State argued that the beating was in retaliation and was a circumstance from which the jury could safely infer guilty knowledge on behalf of the Defendant.
State v. Brooks, 756 So.2d at 339-40.
Additionally, in State v. Fisher, 94-2255 (La.App. 1 Cir. 12/15/95); 669 So.2d 460, writ denied, 96-958 (La.9/20/96); 679 So.2d 432, the fifth circuit held the evidence was not sufficient to prove the defendant had a general intent to possess a gun found in his sister's purse even though he knew the gun was there, ammunition for the gun was found on his person and he had access to the gun. In its opinion, the court stated:
Clearly, defendant was aware of the gun's presence. However, there is no evidence his intent amounted to an intent to possess the gun rather than mere acquiescence to the fact his sister owned a gun and had the gun in her purse. See Heacox, 543 So.2d at 106. Defendant admits the clip to the gun was found in his pocket. However, the ammunition alone was not a firearm for purposes of La.R.S. 14:95.1. See State v. Vailes, 564 So.2d 778, 782 (La.App. 2d Cir.1990). While defendant's physical possession of the ammunition is relevant to establish his knowledge and general intent, considering the manner in which he came into possession of the clip, the presence of the clip on his person does not show his intent to exercise dominion and control over the gun. Defendant did not testify. However, his sister testified that she removed the clip before giving the gun to the guard at the gate. She also testified that she then must have placed the clip on the seat. Defendant's sister owned the gun and stored the gun in her purse. Thus, the mere fact defendant could have reached for the gun does not establish his dominion and control over it.
Id. at 462. See also, State v. Heacox, 543 So.2d at 108, where the court found the defendant did not exercise dominion and control over a gun found in the truck owned by another individual.
In the instant case, the time between Defendant's discovery of the gun and the investigatory stop was only fifteen minutes. The State presented no evidence to controvert Defendant's testimony that he was unaware of the gun's presence until he arrived at his friend's house. Tierra Jones testified she owned the car driven by Defendant prior to the stop, and the gun *1202 found inside the vehicle. Officer Harrison verified Tierra Jones owned both the gun and the car.
There was evidence tending to show Defendant did not wish to take possession of the gun once he discovered it. Defendant testified that after he realized the gun was in the vehicle, he did not move the gun. He further stated once he saw the gun under the driver's seat, he remained outside of the vehicle so as to avoid taking possession of the gun. On direct examination, he admitted knowing he could not touch the gun or re-enter the vehicle without taking actual possession of the gun. Defendant further demonstrated his intent not to possess the gun by his remarks to Jeremiah Johnson after discovering it. At the trial, Jeremiah Johnson testified after Defendant retrieved the cassette tape from the car, he told him:
A. No, sir; when he came back, he just come back with the tape and he said somethin' about he gladhe glad that that he say somethin' `bout his parole or somethin' like that. He glad he didn't get in the car and leave or nothin' like that `cause they had a gun in the car.
The State presented no evidence to controvert Jeremiah Johnson's testimony.
Defendant's knowledge of the gun amounted to no more than an acknowledgment of its presence. This mere acknowledgment of the gun being inside the car is insufficient to prove the intent or guilty knowledge necessary to demonstrate constructive possession as required by the statute. See State v. Heacox, 543 So.2d at 105-106 and State v. Brooks, 756 So.2d at 339. Thus, the jury's finding to the contrary was not supported by sufficient evidence. See State v. Mussall, 523 So.2d 1305 (La.1988).
Defendant's conviction under La.R.S. 14:95.1 is reversed. La.Code Crim.P. art. 814 does not list a responsive verdict for possession of a firearm by a convicted felon. Thus, under La.Code Crim.P. art. 815 Defendant must be acquitted of this charge.

Possession of a Firearm while in Possession of a Controlled Dangerous Substance
The statute governing possession of a firearm while in possession of a controlled dangerous substance is La.R.S. 14:95(E), which states:
If the offender uses, possesses, or has under his immediate control any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, while committing or attempting to commit a crime of violence or while in the possession of or during the sale or distribution of a controlled dangerous substance, the offender shall be fined not more than ten thousand dollars and imprisoned at hard labor for not less than five nor more than ten years without benefit of probation, parole, or suspension of sentence.
Louisiana courts have stated to convict a defendant under La.R.S. 14:95(E), it must be proven beyond a reasonable doubt he was in possession of a controlled dangerous substance and of a firearm simultaneously. With respect to possession of a controlled dangerous substance, the fifth circuit, in State v. Villarreal, 99-827 (La. App. 5 Cir. 2/16/00); 759 So.2d 126, 130, writ denied, 00-1175 (La.3/16/01); 786 So.2d 745, stated:
Several factors may be considered in determining whether the defendant exercised dominion and control of contraband sufficient to constitute constructive possession. They are: (1) the defendant's knowledge that contraband is in the area; (2) his relations with a person found to be in possession; (3) the defendant's access to the area where the contraband *1203 is found; (4) evidence of recent drug use by the defendant; (5) the existence of drug paraphernalia; and (6) evidence that the area was frequented by drug users. State v. Williams, 98-1006, p. 6 (La.App. 5th Cir. 3/30/99), 735 So.2d 62, 69.
In the present case, both Officer Harrison and Officer Brown testified while on patrol on September 4, 1997, they smelled an odor that resembled marijuana smoke within a half block where some men were standing. After smelling the odor, both officers parked their unit and exited the vehicle to investigate. At that point, Officer Harrison observed Defendant putting something in his mouth.
Immediately thereafter, Officer Harrison approached Defendant. She asked him what he was putting in his mouth. According to her testimony, he responded he was smoking a "blunt" cigarette, meaning a cigar that is "cut open," and "laced with marijuana inside." During the conversation, Defendant also "stuck out his tongue," allowing her to see that his tongue was black from chewing the "blunt." Officer Harrison asked Defendant whether there was any marijuana in his vehicle. Defendant stated there was no marijuana in the vehicle.
While Officer Harrison was speaking to Defendant, Officer Brown observed a small package of marijuana on the ground next to Defendant's foot. Officer Brown retrieved the bag and showed it to Officer Harrison. Officer Harrison asked Defendant whether he owned the bag of marijuana. According to Officer Harrison, Defendant admitted the bag was his property.
Defendant's testimony regarding his arrest contradicts that of Officer Harrison and Officer Brown. In particular, Defendant testified he did not admit to Officer Harrison he owned the marijuana seen on the ground, or that he chewed and swallowed a "blunt."
In State v. Taylor, 96-1043 (La. App. 3 Cir. 2/5/97); 688 So.2d 1262, this court held:
A determination of the weight of evidence presented is a question of fact. The resolution of a matter where conflicting testimony exists requires a determination of credibility of the witnesses and is a matter of weight of the evidence and not sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. State v. Nolan, 503 So.2d 1186 (La.App. 3 Cir.), writ denied, 507 So.2d 226 (La. 1987).
Id. at 1267. Thus, the jury was allowed to accept or reject any part and to determine what weight should be given the testimony presented at the trial in reaching the verdict.
In the present case, it is apparent from the verdict rendered that the jury believed the testimonies of Officer Harrison and Officer Brown which the State tendered to proved he possessed marijuana at the time he was stopped by the officers. Thus, we find the evidence was sufficient to satisfy the element of possession of a controlled dangerous substance.
Although the evidence was sufficient to prove the Defendant was in possession of marijuana, we find the evidence was not sufficient to support the Defendant's conviction under La.R.S. 14:95(E). In State v. Villarreal, the fifth circuit stated the standard *1204 used to determine whether a defendant was in possession of a firearm under La.R.S. 14:95(E):
The Louisiana Supreme Court has found that the term "possess", as used in the statute, is broad enough to encompass both "actual" and "constructive" possession. State v. Sandifer, 95-2226, p. 10 (La.9/5/96), 679 So.2d 1324, 1331. In addition, under review for sufficiency of evidence, a person is found to be in constructive possession of a thing if it is subject to his dominion and control. State v. Taylor, 98-603, p. 5 (La.App. 5th Cir.3/10/99), 733 So.2d 77, 80. This control can be temporary in nature and can be shared. State v. Jackson, 97-1246 (La.App. 5th Cir.4/13/98), 712 So.2d 934; Taylor, 733 So.2d at 80.
Id. at 130.
Moreover, in State v. Brooks, this court stated that to support a conviction under La.R.S. 14:95(E), the evidence must be sufficient to prove the defendant had a general intent to possess a firearm. State v. Brooks, 756 So.2d at 339. Notably, the standard for possession of a firearm under La.R.S. 14:95.1 is the same as the standard under La.R.S. 14:95(E). Id. See also, State v. Woods, 94-2650 (La.App. 4 Cir. 4/20/95); 654 So.2d 809, 812, writ denied, 95-1252 (La.6/30/95); 657 So.2d 1035. Thus, having found the evidence did not establish Defendant had the requisite intent to possess a firearm under La.R.S. 14:95.1, the evidence also is insufficient to prove his intent to possess a firearm under La.R.S. 14:95(E). Defendant's conviction under La.R.S. 14:95(E) is reversed.

ASSIGNMENT OF ERROR NO. 2
Having vacated Defendant's sentences, Defendant's assignment of error contending his sentences were excessive is rendered moot.

DECREE
For the foregoing reasons, Defendant's convictions under La.R.S. 14:95.1 and La. R.S. 14:95(E) are reversed. Defendant is acquitted of both charges and his sentences are vacated.
CONVICTIONS REVERSED AND SENTENCES VACATED.